**William Britt LEWIS, d/b/a Triangle Firewood Co., Plaintiff–Appellant,**

v.

**Bruce BABBITT,\* Secretary of the United States Department of the Interior; United States Department of the Interior; National Park Service; James Ridenour, Director, National Park Service; Lee Davis, Director of Concessions; Nation-** al Park Service; Ronald Everhart, Regional Director of Concessions; Robert Barbee, Superintendent, Yellowstone National Park; Steve Martin, Chief of Concessions, Yellowstone National Park, Defendants–Appellees.

No. 92–8039.

United States Court of Appeals, Tenth Circuit.

July 12, 1993.

\* Bruce Babbitt is substituted for Manuel Lujan pursuant to Fed.R.App.P. 43(c)(1).

Kyle Anne Gray (Marcelle Shoop, of Holland & Hart, Cheyenne, WY, with her on the briefs), of Holland & Hart, Billings, MT, for plaintiff-appellant.

Edward A. Boling (Vicki A. O'Meara, and Anne S. Almy, of Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, with him on the brief), of Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for defendants-appellees.

** Honorable Paul. H. Roney, Senior Circuit Judge, United States Court of Appeals for the Eleventh

Before ANDERSON, RONEY,** and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Mr. Lewis appeals a district court order granting the appellees' motion for summary judgment. Lewis was the firewood concessioner in Yellowstone National Park from 1976 to 1989. In 1989, the National Park Service ("NPS") solicited proposals for the firewood concession permit for the next four-year period. NPS received two proposals, including Lewis's, and ultimately decided to award the permit to Firebox Inc. ("Firebox") after concluding that Lewis made material misrepresentations regarding financing and that he failed to demonstrate the ability to finance his amended proposal. On appeal, Lewis argues that the NPS misconstrued the National Park System Concessions Policy Act, 16 U.S.C. §§ 20–20g, and that its decision not to negotiate a new permit with Lewis was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

**I.**

On appeal, we review the grant of summary judgment de novo, using the same standards applied by the district court. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

We review agency action to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We review an agency's interpretation of an ambiguous statute to determine whether it is "rational and consistent with the statute."

Circuit, sitting by designation.

*Aulston v. United States,* 915 F.2d 584, 589 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991) (internal quotations omitted). An agency's interpretation of its own regulations is entitled to great deference and will be rejected only if it is "unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 738 (10th Cir.1993).

■ Judicial review under these standards is generally based on the administrative record that was before the agency at the time of its decision, *id.,* and reviewing courts may not rely on litigation affidavits that provide post hoc rationalizations for the agency's action, *see Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). In order to facilitate judicial review, however, a reviewing court may obtain affidavits from the agency that provide additional explanations of the reasons for its decision. *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). We find that the district court properly relied on the agency's affidavits by using them to explain the administrative record rather than as a substitute for it.

## II.

■ Lewis argues that the NPS acted unreasonably by concluding that Firebox's proposal was responsive to the Statement of Requirements ("SOR") for the permit and by requiring Lewis, who had a right of preference to the permit, to match Firebox's allegedly unresponsive proposal.[1] We reject his argument.

The SOR for the firewood concession permit states:

> To be responsive, proposals must be accompanied by a signed letter and *must contain sufficient information to convince the Secretary* acting through the Superintendent that the proponent meets the principal and secondary factors specified in the following paragraph. All responsive proposals will be further reviewed and evaluated to determine which is the best overall.

(emphasis added). As the emphasized language indicates, this provision does not require strict compliance with the SOR, but rather leaves the responsiveness determination to the agency's discretion. The NPS found that, although neither Firebox's proposal nor Lewis's proposal complied exactly with the SOR's requirements, they both contained sufficient information to be deemed responsive. We hold that this conclusion is not arbitrary, capricious, unlawful, or an abuse of discretion. We therefore need not decide whether a concessioner with a right of preference may be required to match an unresponsive proposal.

■ Lewis next argues that the NPS arbitrarily and capriciously determined that his amended proposal failed to satisfy the SOR's financial requirements. Based on our review of evidence in the administrative record, we disagree. On December 28, 1989, the NPS notified Lewis that Firebox had submitted a better proposal because it proposed to sell firewood from vending machines twenty-four hours a day. Lewis submitted a timely amended proposal in the form of a letter in which he stated his intention to sell firewood through vending machines and to match the terms and conditions of Firebox's proposal. The letter, however, did not indicate how Lewis intended to finance the proposal, and the NPS sought supplemental information from Lewis about his financing arrangements.

On February 20, 1990, Lewis responded by letter, stating that he intended to finance his proposal with a loan from the Montana Department of Commerce and that he had already met with the loan program director and a board member who believed that the loan would be approved. He further indicated that, should the loan not be approved, he would obtain a conventional bank loan. The NPS contacted both of Lewis's proposed lenders the next day to confirm Lewis's representations and discovered that Lewis had not yet contacted either lender about financing his amended proposal. On March 5, 1990, Lewis mailed a letter to the NPS in which he indicated that he was also applying

---

1. Lewis does not deny that a concessioner with a right of preference may be required to match a

responsive proposal that the NPS has determined to be the best proposal. *See* 36 C.F.R. § 51.5(b).

to lease the vending machines in case the loans were not approved. The NPS did not receive that letter, however, until March 7, one day after it had determined that Lewis did not have the necessary financing to implement his proposal and had decided to negotiate a permit with Firebox. Under the circumstances, the NPS's decision was not arbitrary or capricious.

Lewis further argues that the NPS acted arbitrarily by allowing Firebox, but not Lewis, to supplement its proposal with additional financial information. This argument is unavailing. The SOR states that "[t]he National Park Service may verify information and clarify points as it feels necessary. It will not evaluate supplemental information or alterations of the proposal made that are submitted after the closing of the time period for receipt of proposals." This provision is consistent with the agency's regulations, which state that the NPS "may solicit from any applicant additional information, or written or verbal clarification of a proposal." 36 C.F.R. § 51.4(c).

Based on our review of evidence in the administrative record, we conclude that the NPS acted in accordance with these provisions. The NPS extended the time period during which Lewis could provide supplemental information beyond the date on which his amended proposal was due, and it had no obligation to evaluate unsolicited information beyond that period. Therefore, it did not have to consider the information contained in Lewis's March 5 letter, especially in light of the fact that it was received the day after the NPS had made its final decision. In contrast, the information that the NPS obtained on March 5 and March 6 to confirm Firebox's proposal was information that the NPS itself sought in the course of verifying information contained in Firebox's original proposal—namely, that Firebox had secured a bank loan and financing from a private investor.

With respect to all other issues, we agree with the district court's findings and conclusions and affirm for substantially the reasons set forth in the district court's Order on Motions for Summary Judgment filed May 19, 1992.

We **ORDER** the district court opinion published. We **DENY** Appellant's Motion to Supplement Record and **AFFIRM.**